# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| EASTRIDGE PERSONNEL OF LAS VEGAS, INC., <br><br> Plaintiff, <br><br> v. <br><br> KIM DU-ORPILLA, <br><br> Defendant. | Case No. 2:06-CV-00776-KJD-PAL <br><br> **ORDER** |

Presently before the Court is Defendant's Motion for Summary Judgment (#28). Plaintiff filed a response in opposition (#30) to which Defendant replied (#35). Defendant also filed a Motion to Seal (#29) which, good cause being found, is granted.

I.  Facts

Plaintiff ("Eastridge") is a temporary staffing and outplacement service that recruits, evaluates and places personnel for temporary employment on both a short and long term basis. One of Eastridge's divisions is called Pharmacy Placement Professionals ("PPP") which recruits and places for employment temporary and permanent pharmacy professionals, including pharmacists and pharmacy technicians.

Defendant, Kim Du-Orpilla, ("Kim") began working for Eastridge in the PPP division as an account manager in April 2000.  Kim's primary responsibilities included scheduling pharmacists and pharmacy technicians at pharmacies in Nevada and California.  Prior to working for PPP, Defendant worked as a customer service representative for Asereth Medical Services also scheduling temporary pharmacists.  Several of the pharmacists Defendant scheduled for Asereth followed Defendant to PPP and began employment with PPP so that they could be scheduled by Kim.

On or about April 16, 2004, Defendant signed an Employee Proprietary Information Agreement ("the Agreement").  The Agreement stated that Defendant would not "solicit or entice any employee...to (i) leave EPL or (ii) compete against EPL ["the non-solicitation Agreement"] and [Defendant would] not...contact, solicit or entice, or in any way divert, using Proprietary Information, any customer-client employers, or applicants of EPL ["the proprietary information Agreement]."  Thus, the Agreement prevented Defendant from disclosing, using, or removing any Eastridge trade secrets, confidential or proprietary information and from contacting soliciting or enticing any employee, including staff and temporary employees of Eastridge to leave Eastridge or compete against Eastridge, during her employment and for a period of one (1) year after termination of her employment.  The Agreement also prohibited her from working for a competitor in Clark and Washoe Counties in Nevada as well as Maricopa County, Arizona.

On April 19, 2006, Defendant was terminated by PPP for insubordination.  Upon her termination, Defendant returned all PPP company property including her cell phone and contact lists.  In mid-May 2006, Defendant began working for AHR Pharmacy Solutions ("AHR") in California scheduling temporary pharmacists and other pharmacy professionals.  AHR is a competitor of PPP's in the market for placing temporary pharmacists, particularly in California.

After beginning work for AHR, Defendant began placing ten pharmacists for AHR that had previously worked for PPP.  On June 13, 2006, Plaintiff filed the present action against Defendant in Nevada state court seeking damages for breach of contract, misappropriation of trade secrets under Nevada statute, and other common law torts.  Additionally, Plaintiff sought a temporary restraining

order and preliminary injunction preventing Defendant from divulging or using Plaintiff's trade secrets and proprietary information and enjoining Defendant from contacting or soliciting employees or former employees of PPP. Defendant timely removed the case on June 23, 2006 and the Court denied Plaintiff's motion for a temporary restraining order on June 30, 2006. At the close of discovery, Defendant filed the present motion for summary judgment.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine

3

issue" of material fact precluding summary judgment. <u>Villiarimo v. Aloha Island Air Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See <u>Anderson</u>, 477 U.S. at 248.

III.  Analysis

A.  Breach of Contract

The express terms of the contract limit the effect of the non-compete agreement to counties in Nevada and Arizona. Therefore, any claims based on the covenant not to compete are dismissed. In order for Plaintiff to sustain a claim for breach of contract based on the non-solicitation Agreement or the proprietary information Agreement contained in the contact, it must show (1) the existence of a valid contract, (2) a breach by defendant, and (3) damage as a result of the breach. See <u>Saini v. Int'l Game Tech.</u>, 434 F. Supp.2d 913, 919-20 (D. Nev. 2006)(citing <u>Richardson v. Jones</u>, 1 Nev. 404, 405 (Nev. 1865)).

Here, Defendant asserts that no material fact prevents the Court from granting summary judgment on the breach of contract claims because there is no evidence that Defendant (1) solicited or enticed any employee of PPP to leave or compete with PPP; or (2) contacted, solicited, or enticed, or in any way diverted an employee of PPP using Proprietary Information. In response, Plaintiff has asserted that the evidence shows that Plaintiff solicited ten employees using proprietary information. Having read and considered the evidence that both parties claim supports their positions, the Court must grant the motion in part and deny the motion in part.

First, Plaintiff claims that the names, addresses and phone numbers of its temporary employees and applicants are proprietary information and trade secrets. However, the names, addresses and phone numbers of the pharmacists at issue in this case are not protectable as trade secrets, because they are "readily ascertainable by proper means by those who can obtain commercial

4

or economic value" from the use of the names, addresses and phone numbers. See Nev. Rev. Stat. 600A.030(5)(a); Frantz v. Johnson, 999 P.2d 351, 359 (Nev. 2000)("not every customer...list will be protected as a trade secret"). A list of licensed pharmacist's names, numbers and addresses is available for purchase from the California Department of Consumer Affairs for a nominal fee. The uncontested evidence demonstrates that it was standard industry practice for employment agencies to use these lists for recruitment purposes. Therefore, the names, addresses and phone numbers of the pharmacists in this case is readily available to those who gain economic value from the information. Therefore, any claims based upon Defendant's alleged use or disclosure of the names, addresses and phone numbers of the pharmacists are dismissed.

Next, Plaintiff asserts that ten pharmacists being placed for assignments by PPP were solicited by Defendant, in violation of the non-solicitation Agreement, after Defendant began employment with AHR. Particularly, Plaintiff asserts that Defendant called the pharmacists, sent them applications, or disclosed their identities to AHR in violation of the non-solicitation Agreement and the proprietary information Agreement.

Specifically, Plaintiff alleges that Defendant called pharmacist Fiona Chan, sent her an application, and scheduled her to work at the same pharmacies that she had been placed at with PPP. However, the undisputed testimony showed that Chan contacted AHR first. The Agreement does not hamper the ability of PPP employees to seek employment with AHR or to contact Defendant Kim Du-Orpilla. They only lose the option of being contacted by her first. See Loral Corp. v. Moyes, 219 Cal. Rptr. 836, 844 (Cal. Ct. App. 1985)(where former employee was barred from soliciting employees of his former employer, he was not barred from receiving and considering applications). Particularly, where no evidence shows that Defendant solicited the applications, her conduct in sending the applications on request does not violate the non-solicitation Agreement. See Cap Gemini America, Inc. v. Judd, 597 N.E.2d 1272, 1287 (Ind. Ct. App. 1992); VL Systems, Inc. v. Unisen, Inc., 61 Cal. Rptr. 3d. 818, 822-23 (Cal. Ct. App. 2007)(where a third party initiates the employment attempt the interests of the third party in his own mobility are deemed paramount where

1   no illegal act accompanies the employment change).  In this instance, the evidence shows that Chan
2   initiated the exchange with AHR initially in 2005 before Kim left employment with PPP, and later
3   called AHR in 2006 when her supervisor at her full time job told her that Defendant had begun
4   working for AHR.  Finally, Plaintiff alleges that an issue of fact regarding whether Plaintiff breached
5   the Proprietary Information portion of the Agreement is raised by the fact that Chan was placed by
6   AHR at the same pharmacy locations that PPP placed her at.  However, Plaintiff has produced no
7   specific evidence that Defendant disclosed proprietary information regarding Chan's preferred
8   locations.  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy.
9   See O.S.C. Corp., 792 F.2d at 1467.  Therefore any claims arising from Defendant's conduct with
10  Fiona Chan are dismissed.
11          Similarly, pharmacist William Toy spoke with AHR regarding employment in 2005 after
12  AHR initiated contact.  In 2006, a colleague told Toy that AHR was offering more money and that
13  Kim was working for them.  He called AHR and was sent an application.  The undisputed testimony
14  showed that he initiated the contact and was attracted by better pay.  Another AHR employee sent
15  him an application, but Defendant called Toy to see if he was going to complete it.  Since Toy
16  initiated the contact and no evidence has been presented showing that Defendant used proprietary
17  information to secure his employment, the Court dismisses any claims involving Defendant's
18  conduct with William Toy.
19          Plaintiff also alleges that Kim violated the contract by soliciting employment from pharmacist
20  Terry Chu, a long-time friend of Defendant.  Chu had stopped working for PPP in April of 2006 and
21  began working full time for another agency, Cameron.  In September of 2006, she contacted
22  Defendant and asked if they had any independent contract work in Sacramento.  In response,
23  Defendant said that they did and sent Chu an application.  Chu began accepting placements from
24  AHR shortly after that.  Again, this conduct does not violate the Agreement.  In fact, Chu had
25  independently stopped working for PPP when she started looking for part-time work with AHR.  All
26  claims involving Defendant's conduct with Terry Chu are dismissed.

6

Plaintiff also alleges that another long time friend of Defendant, Maichi Nguyen, was solicited by Defendant. Again the only questionable conduct raised by Plaintiff is that Defendant may have sent Nguyen a contract. The evidence shows that Nguyen initiated contact with Defendant after locating her new contact information through fellow pharmacists. The only evidence Plaintiff asserted in opposition to Defendant's motion for summary judgment involving Nguyen is the undisputed fact that Nguyen began employment with AHR, after Defendant began working for AHR. Plaintiff has submitted no other evidence that Defendant solicited Nguyen or used proprietary information. These facts submitted by Plaintiff do not create issues that must be resolved by the fact finder. Therefore, the Court grants summary judgment on all claims involving Maichi Nguyen.

Plaintiff also asserts that Defendant solicited pharmacist Jean Swanson. Again, the only evidence Plaintiff asserted in opposition to Defendant's motion for summary judgment involving Swanson is the undisputed fact that Swanson began employment with AHR, after Defendant began working for AHR. In fact, the undisputed testimony shows that Swanson independently hunted down Defendant's new employer looking for her. The Court grants summary judgment on all claims involving Swanson, because Plaintiff has raised no issues of fact that would show that Defendant violated the Agreement.

Plaintiff also asserts that Defendant breached the non-solicitation Agreement and proprietary information Agreement by having AHR contact pharmacists Isaac Erinmwingbovo, Andrew Sizneroz, and Shiva Keramati. While each of these individuals was contacted by AHR after Kim began working there, Plaintiff has adduced no evidence demonstrating that Defendant was either surreptitiously behind the phone calls or that proprietary information was used to initiate them. In fact, Shiva Keramati and Isaac Erinmwingbovo both had already applied to AHR in 2005. Since Plaintiff has failed to adduce evidence raising at least an issue of fact, the Court must grant summary judgment on all claims involving these Defendants.

Finally, Plaintiff has raised genuine issues of fact involving Defendant's conduct with pharmacists Lorraine Lee and Ha Hua. While the evidence of whether Defendant breached the non-

solicitation Agreement and the Proprietary Information Agreement in her conduct related to these two pharmacists is weak, Plaintiff has raised genuine issues of fact that must be resolved by a finder of fact.  Therefore, the Court must deny summary judgment on Plaintiff's claims relating to Defendant's conduct with these two individuals only.

### B.  Misappropriation of Trade Secrets

As discussed *infra*, Plaintiff's claim for misappropriation of trade secrets based on the pharmacists' names, addresses and telephone numbers does not qualify for protection under Nevada's Uniform Trade Secrets Act ("UTSA").  See Frantz, 999 P.2d at 358-59; Nev. Rev. Stat. 600A.030(5).  Therefore, all claims based on  the pharmacists' names, addresses and telephone numbers are dismissed.  However, those claims based on the use of proprietary information to contact or schedule Lee or Hua are preserved for trial.

### C.  All Other State Law Causes of Action

The Court in Frantz found that state law causes of action that arose from a single factual episode, misappropriation of proprietary information, was preempted by the UTSA.  See  Frantz, 999 P.2d at 358-59.  Therefore, the Court orders Plaintiff to show cause why the remaining state law causes of action should not be dismissed.  Plaintiff shall file a response thirty (30) days after the entry of this order, or concurrently with the Joint Pretrial Order whichever occurs first.  Defendant shall file a reply to Plaintiff's response eleven (11) days after service of the response.

### D.  Punitive Damages

In support of its claim for punitive damages under Nevada statute, Plaintiff asserts that Defendant acted with malice.  Plaintiff points to the alleged violations of NRS 600A.030(5)(a) and her alleged conduct in soliciting pharmacist clients of PPP for her new employer, a direct competitor. Plaintiff has not raised issues of fact that, if resolved in its favor, demonstrate clear and convincing evidence of malice.  See NRS 42.005(1).  Therefore, the Court grants Defendant's motion for summary judgment on this issue.

E.  Injunctive and Other Requested Relief

Since the Agreement limited Defendant's conduct for only one year after her termination, and that year has expired, Plaintiff's request for injunctive relief and specific performance is denied as moot.

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#28) is **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that Defendant's Motion to Seal (#29) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff **SHOW CAUSE** why its state law tort claims should not be dismissed as preempted.

DATED this 27th day of March 2008.

_____
Kent J. Dawson
United States District Judge